FILED

2012 Jun-25  AM 10:03
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| ESTATE OF VINCENT L. ROWELL, *et al.*, | ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | Civil Action No. 5:11-CV-3439-RRA |
| WALKER BAPTIST MEDICAL CENTER, *et al.*, | ) ) ) | |
| Defendants. | ) | |

## OPINION & REASONS

This case is before the court on the report and recommendation of the Magistrate Judge, recommending that the case be dismissed for lack of subject matter jurisdiction.[1]   Plaintiffs filed objections to the report and recommendation,[2] and defendants replied to plaintiffs' objections.[3]  Following reference of the Magistrate Judge's report and recommendation to the undersigned, for review of the plaintiffs' objections, this court considered the entire file in this action, including the report and recommendation, and has reached an independent conclusion that plaintiffs' objections are due to be sustained, and that the Magistrate Judge's recommendation is due to be rejected for the reasons set out more fully below.

---

[1] Doc. no. 68 (Report & Recommendation).

[2] Doc. no. 86 (Plaintiffs' Objections to Report & Recommendation).

[3] Doc. no. 89 (Reply to Plaintiffs' Objections).

## I. THE NATURE OF PLAINTIFFS' CLAIMS

This is an action "to vindicate the constitutional rights of Plaintiff, Decedent, Vincent L. Rowell."[4]  It was commenced by Mr. Rowell's parents and Horacia Pickett,[5] the personal representative of the estate of Vincent L. Rowell.[6]  Those plaintiffs' federal constitutional claims are asserted under 42 U.S.C. § 1983 against several municipal, county, and state law enforcement officers for violation of Mr. Rowell's Fourth Amendment rights to be free from unreasonable seizures and the infliction of excessive physical force, and violation of his Eighth Amendment right to be protected from cruel and unusual punishment.  Plaintiffs also assert under 28 U.S.C. § 1367(a) supplemental state-law claims for negligence, wantonness, and wrongful death.  All of plaintiffs' claims are related to Mr. Rowell's death in jail due to injuries he allegedly received while in the custody of law enforcement.[7]

> Some counts of the complaint arise out of injuries the decedent allegedly suffered as a result of a police chase.  Other counts arise out of the treatment the decedent received at the hands of the hospital where he was taken after the end of the chase.  Still other counts arise out of the plaintiff's treatment while in custody at the Walker County Jail.

Doc. no. 68 (Report & Recommendation), at 2.  The Magistrate Judge summarized

---

[4] Doc. no. 29 (Amended Complaint), at 4.

[5] Mr. Pickett's name is spelled variably in the record as "Horacia," "Horacio," and "Heracia."

[6] Amended Complaint, at 4.

[7] *See generally* Amended Complaint.

the facts alleged by plaintiffs in the following manner:[8]

On September 30, 2009, at approximately 1:00 a.m., Vincent L. Rowell, without permission, took a Jefferson County dump truck from a county lot.  He was pursued by officers of the Sumiton Police, the Alabama State Troopers, the Walker County Sheriff's Department, and the Marion County Sheriff's Department.  Police used road spikes and a road block to stop the vehicle around 6:00 a.m.  Rowell exited the truck running and was subsequently stopped and arrested.

Rowell was taken to the Sumiton police department headquarters and then to the Walker Baptist Medical Center at 6:20 a.m.  The plaintiff had suffered injuries during his initial arrest, which the plaintiff states "were inconsistent with the training manual for the apprehension of suspects by sworn police officers." (Doc. 29, p. 7.)  He was released to the Sumiton Police at 10:30 a.m. and taken back to the Sumiton police headquarters.

The Walker County Sheriff's Department eventually took custody of Rowell from the Sumiton Police.  At the time of the change of custody, Rowell was unable to walk.  During the booking process, Walker County deputies noted that Rowell was not able to stand or walk, and they had difficulty understanding Rowell's answers to questions.  Rowell was dragged into his cell by two unknown Walker County Deputies.  For the next seven days, Rowell, unable to walk, lay on the floor, in his own human waste.  During this period of time Rowell pleaded for medical treatment, "anticipating that he would die if he did not get medical care."  (Doc. 29, p. 7.)

Two professionally trained nurses visited Rowell twice a day for seven days while he wss in jail.  He received one visit from a doctor.  He "was refused hospitalization for medical care." (Doc. 29, p. 7.)  Rowell pleaded for help at least twice a day for each day he was there, and he further pleaded to be taken to the hospital, a distance of about a half a mile away.

Rowell asked to be allowed to use the telephone.  He was told that he

---

[8] Of course, in ruling upon motions to dismiss and for summary judgment, trial courts must assume the truthfulness of the facts alleged in the plaintiffs' complaint, and draw all reasonable inferences in favor of the parties opposing dismissal or summary judgment.  *See*, *e.g.*, *Ashcroft v. Iqbal*, 556 U.S. —, 129 S. Ct. 1937, 1949-50 (2009) (motions to dismiss) ("When there are well-pleaded factual allegations, *a court should assume their veracity* and then determine whether they plausibly give rise to an entitlement to relief.") (emphasis supplied); *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (*en banc*) (summary judgment).

could use the phone only if he could get to the phone, that was out of his reach. "[T]he officials at the jail had clear knowledge that Decedent was paralyzed and unable to walk." (Doc. 29, p. 8.)  Rowell eventually dragged himself to the phone.  His only call was to his parents, and it "was interrupted when he informed his parents of his being beaten and being stunned by a taser." (Doc. 29, p. 8.)

> On or about October 2, 2009, the plaintiff
>
> was dragged out of his cell to a court hearing.  He was  returned to his cell in a wheel chair bleeding from the rectum.  The staff at the Walker County jail was aware, and had actual knowledge, of Decedent's paralysis and inability to walk.  On October 6, 2009, Decedent Rowell was discovered dead in his cell.

(Doc. 29 p. 8.)

Doc. no. 68 (Report & Recommendation), at 6-8.

## II.  THE BASIS FOR THE MAGISTRATE'S OPINION

Plaintiffs' original complaint was filed on September 22, 2011.[9]  However, Horacia Pickett was not appointed the personal representative of the estate of Vincent L. Rowell, deceased, until September 26, 2011 — *i.e.*, four days *after* this action was commenced,[10] and nine days *before* the amended complaint was filed on October 5, 2011.[11]  Based upon those facts, the Magistrate Judge concluded that plaintiffs lacked standing to pursue the claims asserted in this case and, therefore, that this court did

---

[9] *See* doc. no. 1 (Complaint).

[10] *See* doc. no. 51, at Exhibit 1 (Docket Report from the Probate Court of Jefferson County, Alabama, indicating that "Heracia Pickett" received Letters of Administration on Sept. 26, 2011). As observed in note 5, *supra*, Mr. Pickett's first name is spelled in various ways in the record:  *e.g.*, as "Horacia," "Horacio," and "Heracia."

[11] *See* doc. no. 29 (Amended Complaint).

4

not have subject matter jurisdiction.   The following considerations informed his

judgment.

> Alabama's Wrongful Death Statute, § 6-5-410, Ala. Code (1975), "vest[s] standing to sue only in the personal representative." *Tucker v. Molden*, 761 So.2d 996, 998 (Ala. 2000).  A plaintiff cannot "maintain [a] wrongful death action *until he [is] appointed as a personal representative of [the] estate.*" *Buck v. City of Rainsville*, 572 So.2d 419, 422 (Ala. 1990) (emphasis in original) (under the Wrongful Death Act, claims "must be brought by a personal representative" *Id.* at 423); *Wright v. Woodley Manor Nursing Home,* [No. 2:06-CV-1041-WKW] 2007 WL 841614, *4 ([Mar. 19, 2007] M.D. Ala.) ("Plaintiff does not have standing to bring suit for a 'wrongful death' claim since she is not a 'personal representative' as defined under Alabama law.")[.] Ala. Code § 6–5–462, also known as the Alabama survivorship statute, bars all state law claims other than wrongful death that were unfiled at the time of the plaintiff's death.  Even if the claims had been filed at the time of the plaintiff's death, there still would not be standing since the survivorship statute vests the right to sue only "in favor of and against personal representatives." Ala. Code. 6-5-462.   The only evidence before the court is that no such personal representative had been appointed at the time of the filing of this action.

> > The same analysis applies to civil rights claims under Section 1983.  By its terms, 42 U.S.C. § 1983 does not provide for the survival of civil rights actions.   Due to this "deficiency" in the statute, the survivorship of civil rights actions is governed by 42 U.S.C. § 1988(a). *Robertson v. Wegmann*, 436 U.S. 584, 588–89, 98 S. Ct. 1991, 1994, 56 L. Ed. 2d 554 (1978).   That statute generally directs that, where federal law is "deficient," the state law of the forum applies as long as it is "not inconsistent with the Constitution and the laws of the United States."  42 U.S.C. § 1988(a).

> > *Estate of Gilliam ex rel. Waldroup v. City of Prattville*, 639 F.3d 1041, 1045 (11th Cir. 2011).  The Eleventh Circuit, in *Estate of Gilliam*, held that Alabama's survivorship statute also applies to section 1983 claims that do not result in death.  Theses claims could survive only if they had been filed before the death of the plaintiff, and only then if filed by a duly appointed representative of the plaintiff's estate.  See Ala. Code. § 6-5-462.   Neither happened here.  Alabama's wrongful death statute can be applied to allow the Section 1983 death claims to survive, but, as shown above, only in favor of the named representative.

Because standing must be determined at the time the complaint was filed, and because the parties listed in the complaint were not the representatives of the plaintiff at that time, they have no standing to sue on his behalf.  Accordingly, this court lacks jurisdiction to hear this case and it should be dismissed.[12]

"Article III, § 2, of the Constitution restricts the federal 'judicial Power' to the resolution of 'Cases' and 'Controversies.'[13]  That case-or-controversy requirement is satisfied only where a plaintiff has standing." *Sprint Communications Co.*, *L.P. v. APCC Services*, *Inc.*, 554 U.S. 269, 273 (2008) (citing *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332 (2006)); *see also*, *e.g.*, *McConnell v. Federal Election Commission*, 540 U.S. 93, 225 (2003) ("One element of that 'bedrock' case-or-controversy requirement is that plaintiffs must establish that they have standing to sue.") (quoting *Raines v. Byrd*, 521 U.S. 811, 818 (1997)), *overruled on other grounds by Citizens United v. Federal Election Commission,* – U.S. – , 130 S. Ct. 876

---

[12] Doc. no 68 (Report & Recommendation), at 10-11 (emphasis in original, bracketed alterations supplied).

[13] Article III, § 2 reads, in pertinent part, as follows:

The judicial Power shall extend to all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority;— to all Cases affecting Ambassadors, other public Ministers and Consuls;— to all Cases of admiralty and maritime Jurisdiction;— to Controversies to which the United States shall be a Party;— to Controversies between two or more States;— between a State and Citizens of another State;— between Citizens of different States;— between Citizens of the same State claiming Lands under Grants of different States, and between a State, or the Citizens thereof, and foreign States, Citizens or Subjects.

U.S. Const. art. III, § 2, ¶ 1 (1789).

(2010).

It follows, therefore, that a challenge to a plaintiff's standing is an attack on the court's subject matter jurisdiction. *See*, *e.g.*, *Stalley v. Orlando Regional Healthcare System, Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008) ("Because standing is jurisdictional, a dismissal for lack of standing has the same effect as a dismissal for lack of subject matter jurisdiction[.]") (internal quotations omitted); *London v. Wal-Mart Stores, Inc.*, 340 F.3d 1246, 1251 (11th Cir. 2003) ("The issue of whether plaintiff lacks standing is jurisdictional[.]").

As distinguished academicians have observed, however, "[s]tanding frequently has been identified by both justices and commentators as one of the most confused areas of the law." Erwin Chemerinsky, *Federal Jurisdiction* § 2:3, at 57 (5th ed. 2007). "Many exasperated courts and commentators have . . . [complained] that [the] standing doctrine is no more than a convenient tool to avoid uncomfortable issues or to disguise a surreptitious ruling on the merits." Charles Allen Wright, Arthur R. Miller & Edward H. Cooper, 13 *Federal Practice & Procedure: Jurisdiction* § 3531 (2d ed. 2006) (footnote omitted).

### III. DISCUSSION

All of plaintiffs' state-law claims fall under the umbrella of Alabama's

wrongful death statute.  *See* Ala. Code § 6-5-410(a) (1975) (Supp. 2011).  Only a duly

appointed personal representative of the decedent's estate has standing to sue under

that statute.  *See id.*; Ala. Code § 6-5-462 (1975); *Tucker v. Molden,* 761 So. 2d 996,

998 (Ala. 2000) (stating that the Alabama wrongful death statute vests "standing to

sue only in the personal representative").

     The same is true for plaintiffs' § 1983 claims for constitutional violations, as

the Eleventh Circuit observed in *Estate of Gilliam ex rel. Waldroup v. City of

Prattville,* 639 F.3d 1041 (11th Cir. 2011):

> [W]hen a constitutional violation actually causes the injured party's
> death, a § 1983 claim can be asserted through the Alabama wrongful
> death statute, Ala. Code § 6-5-410.  So, when a constitutional violation
> actually causes death, Alabama law provides compensation for the
> constitutional violation and imposes liability on the state official
> responsible for the death — a result consistent with the purposes of §
> 1983.

*Id*. at 1047-48.

     Here, it is undisputed that neither Heracia Pickett, nor any other individual, was

appointed as the personal representative of Mr. Rowell's estate until September 26,

2011[14] — *i.e.*, four days *after* plaintiffs' original complaint was filed on September

22, 2011,[15] and nine days *before* the amended complaint was filed on October 5,

_____

[14] *See supra* note 10.

[15] *See* doc. no. 1 (Complaint).

2011.[16]  Thus, defendants asserted in the proceedings before the Magistrate Judge to whom this case was assigned that plaintiffs lacked standing when they filed the original complaint.

In response, plaintiffs argued that the standing defect was cured when they filed an amended complaint (which asserts essentially the same claims alleged in the original complaint) *after* Pickett received his Letters of Administration from the Probate Court of Jefferson County, Alabama.

Under other circumstances, plaintiffs' argument would be unavailing.  As defendants point out, "the standing inquiry remains focused on whether the party invoking jurisdiction had the requisite stake in the outcome *when the suit was filed*." *Davis v. Federal Election Commission,* 554 U.S. 724, 734 (2008) (emphasis supplied) (citations omitted); *see also Focus on the Family v. Pinellas Suncoast Transit Authority,* 344 F.3d 1263, 1275 (11th Cir. 2003) ("Article III standing must be determined as of the time at which the plaintiff's complaint is filed.") (citations omitted).  Thus, if a plaintiff lacked standing when the complaint first was filed, subsequent amendments cannot create standing.  In fact, any attempt at subsequent amendments is simply ineffective, because "[b]y lacking standing to bring a claim the

---

[16] *See* doc. no. 29 (Amended Complaint).

appellants also lack standing to amend the complaint." *Wright v. Dougherty County,* 358 F.3d 1352, 1356 (11th Cir. 2004).

Alabama courts follow those same principles, and have even applied them in the specific context of wrongful death actions. *See, e.g., Cadle Co. v. Chabani,* 4 So. 3d 460, 463 (Ala. 2008). As the Alabama Supreme Court has put it, when a plaintiff files a wrongful death suit without first being duly appointed as the personal representative of the decedent's estate, the suit is "a nullity," and subsequent amendments therefore have no effect. *Downtown Nursing Home, Inc. v. Pool,* 375 So. 2d 465, 466 (Ala. 1979). *See also State v. Property at 2018 Rainbow Drive*, 740 So. 2d 1025, 1028 (Ala. 1999) ("[A] pleading purporting to amend a complaint, which complaint was filed by a party without standing, cannot relate back to the filing of the original complaint, because there is nothing 'back' to which to relate.") (citation omitted); *Alabama Department of Corrections v. Montgomery County Commission,* 11 So. 3d 189, 193 (Ala. 1993) ("The purported amendment of a nullity is also a nullity.").

Thus, by commencing this action before a personal representative had been appointed for the decedent's estate, plaintiffs' attorneys came very close to converting a presumptively valid wrongful death suit into a compelling action for legal

malpractice.

Fortunately for plaintiffs' counsel (and the parties they purport to represent), however, the unique situation presented in this case is subject to a narrow exception to the usual standing rules.  The Eleventh Circuit clarified that exception in *Hess v. Eddy,* 689 F.2d 977 (11th Cir. 1982), *abrogated on other grounds by Wilson v. Garcia*, 471 U.S. 261 (1985), a decision that was not cited in any party's briefs.  The pertinent facts of that case were as follows:

> On November 2, 1978, an inmate in an Alabama county jail was brutally murdered by a fellow prisoner.  On October 31, 1980, the victim's widow brought this civil rights damage action, alleging that her husband's death had been caused by the local prison officials' failure to provide safe and secure conditions of confinement.  The plaintiff filed her civil rights damage action in U.S. District Court pursuant to 42 U.S.C. § 1983.  She brought suit in two capacities: as the victim's widow and as the administratrix of his estate.  However, it was later determined that the plaintiff had not been appointed administratrix of her late husband's estate until some time after she had filed her action. At that time, she amended her original complaint so as to reflect her new status as administratrix and to indicate her ratification of the initial filing of suit.

*Id.* at 979.  The district court below had held that "the only party who could properly bring this section 1983 action was the administratrix of the decedent's estate and that because the plaintiff was not yet the administratrix at the time she filed her complaint, the action had actually not been brought within the limitations period."  *Id.*  The

district court also held that "the subsequent amendment of the complaint and its ratification by the real party in interest did not 'relate back' to the initial filing of suit." *Id.* In so holding, the district court relied on Alabama cases that rejected the "relation back" doctrine in wrongful death actions. *Id.* Importantly, this was the *same* line of Alabama cases discussed above, including the *Downtown Nursing Home* decision, all of which essentially held that "a wrongful death suit brought by someone other than a duly appointed administratrix is void, and a subsequent amendment or ratification of the action by the real party in interest does not relate back to the time of initial filing." *Hess*, 689 F.2d at 979 n.4.

The Eleventh Circuit held the district court erred in adopting Alabama's "no relation back" rule, because that rule was inconsistent with Federal Rule of Civil Procedure 17(a), which, at the time, read as follows:

> No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest; and such ratification, joinder, or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest.

*Hess*, 689 F.2d at 980 (quoting the version of Fed. R. Civ. P. 17(a) in effect at the

time).[17]  According to the Eleventh Circuit, the "plain language" of that Rule

> clearly provides that when an action is brought by someone other than
> the real party in interest within the limitations period, and the real party
> in interest joins or ratifies the action after the limitations period has run,
> the amendment or ratification relates back to the time suit was originally
> filed and the action need not be dismissed as time barred.

*Id.*  The Court emphasized that its interpretation of Rule 17 was consistent with:  (1)

Supreme Court precedent;[18] (2) the Advisory Committee Notes to the 1966

amendments to Rule 17;[19] (3) the commentary in trusted treatises;[20] and (4) the

---

[17] The relevant portion of Rule 17 currently reads:

> The court may not dismiss an action for failure to prosecute in the name of
> the real party in interest until, after an objection, a reasonable time has been allowed
> for the real party in interest to ratify, join, or be substituted into the action.  After
> ratification, joinder, or substitution, the action proceeds as if it had been originally
> commenced by the real party in interest.

Fed. R. Civ. P. 17(a)(3).

[18] In *Levinson v. Deupree,* 345 U.S. 648, the Supreme Court held that

> where a wrongful death action is brought by a party not yet properly appointed as the
> administrator of the decedent's estate, and where proper appointment occurs only
> after the applicable state limitations period has run, a federal court must allow the
> appointment to "relate back" to the time of initial filing — even though the forum
> state would not allow such a "relation back" and would hold the action time barred
> in its own courts.

*Hess,* 689 F.2d at 981 (discussing *Levinson*).

[19] The Advisory Committee stated in 1966 that the purposes of adding provisions to allow
for relation back when the real party in interest is substituted after the complaint is filed were to
"insure against forfeiture and injustice" and to "codify in broad terms the salutary principle of"
*Levinson.*  Fed. R. Civ. P. 17 advisory committee's note.

[20] The Eleventh Circuit cited *Moore's Federal Practice* and Wright and Miller's *Federal
Practice and Procedure*, both of which emphasized that Rule 17 was designed to allow relation back
even when the applicable state law would not.  *Hess,* 689 F.2d at 981 (citing 3A James Wm. Moore

decisions of most other courts that had considered the issue.[21]  *Id.* at 980-81.  Based

upon those considerations, the Eleventh Circuit held that

> Rule 17(a) sets forth a rule of procedure that is to be applied in the
> federal courts.  The Rule provides that when an action is brought by
> someone other than the real party in interest, the suit need not be
> dismissed if the real party in interest subsequently joins or ratifies the
> action.  The Rule further provides that such subsequent joinder or
> ratification by the real party in interest relates back to the time the suit
> was first filed.  If the initial filing came within the applicable limitations
> period, the suit is not time barred.  Most importantly, the Rule is to be
> applied even where the courts of the forum state have rejected the
> "relation back" doctrine.  For this reason, we must conclude that the
> district court erred in applying Alabama law on the question of whether
> the doctrine of "relation back" would apply in this case.  This is a
> federal civil rights action, brought in a federal court, and it is the Federal
> Rules of Civil Procedure that must apply.

*Hess*, 689 F.2d at 981.  Accordingly, the case was not time-barred, because the

administratrix had been properly substituted as the real party in interest.  *Id.* at 982.

Similarly, in the present action, and despite the fact that Horacio Pickett had

not been appointed as the administrator of Vincent Rowell's estate on the date the

---

*et al., Moore's Federal Practice* ¶ 17.09 (2d ed. 1982); Charles Allen Wright & Arthur R. Miller,
6C *Federal Practice & Procedure* § 1541 (1971).

[21] The Court cited *Farbwerke Hoechst A.G. v. M/V "Don Nicky,"* 589 F.2d 795, 797-98 (5th
Cir. 1979), *Wadsworth v. United States Postal Service*, 511 F.2d 64, 65-67 (7th Cir. 1975), *Crowder
v. Gordons Transports, Inc.,* 387 F.2d 413, 415 (8th Cir. 1967), *Motta v. Resource Shipping & Enter.
Co.*, 499 F. Supp. 1365, 1369, 1374 (S.D. N.Y. 1980), *de Vries v. Weinstein International Corp*., 80
F.R.D. 452, 458-459 (D. Miss. 1978), *Unilever Ltd. v. M/T Stolt Boel*, 77 F.R.D. 384 (S.D. N.Y.
1977), *James v. Nashville Bridge Co.*, 74 F.R.D. 595, 596-597 (N.D. Miss. 1977), *Caldwell v.
Metcalfe*, 458 F. Supp. 847, 848 (E.D. Tenn. 1977), and *Honey v. George Hyman Construction Co.*,
63 F.R.D. 443 (D. D.C. 1974).  *See Hess,* 689 F.2d at 981 & 981 n.8.

original complaint was filed, he was duly appointed soon thereafter, and he was duly substituted as the real party in interest in this case. Thus, even though Mr. Pickett did not have standing to assert § 1983 and wrongful death claims on behalf of the estate when the original complaint was filed, the amendment of the complaint to substitute Mr. Pickett, *as the administrator of the estate*, as the real party in interest relates back to the original filing.[22] This holding applies even though the same result would not be permissible under Alabama law, and it represents an exception to the general rule that standing must be determined as of the date the case is filed.

Accordingly, this court sustains plaintiffs' objections, and rejects the recommendation of the Magistrate Judge. It is ORDERED that defendants' motions to dismiss are DENIED, insofar as they were founded on plaintiffs' alleged lack of standing. It is further ORDERED that the Clerk return this case to the Magistrate Judge for all further proceedings.

DONE this 25th day of June, 2012.

_Lynwood Smith_
_____
United States District Judge

---

[22] It should be noted that the amended complaint filed on Oct. 5, 2011, following the appointment of Mr. Pickett as personal representative of the decedent's estate, was docketed one day prior to the expiration of the applicable statute of limitations. *See* Ala. Code § 6-5-410(d) (1975) (prescribing that wrongful death actions "must be commenced within two years from and after the death of the testator or intestate").